UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


United States of America

        v.                              Crim. No. 2:13-cr-165-3

Tom Arbuckle


## <u>REPORT AND RECOMMENDATION</u>
(Doc. 138)

Tom Arbuckle, proceeding *pro se*, has filed a Motion pursuant to 28 U.S.C.

§ 2255 to Vacate his conviction in this court following his plea of guilty to one count of

engaging in a conspiracy to distribute alpha-Pyrrolidinovalerophenone (a-PVP), a

Schedule I controlled substance analogue.[1]  (Doc. 138 at 1, 2, 8; Doc. 140 at 9, 27.)  On

August 24, 2015, United States District Judge William K. Sessions III sentenced

Arbuckle to 48 months in prison, to be followed by a three-year term of supervised

release.  (Doc. 136 at 1, 2, 3.)

Arbuckle now contends that his conviction and sentence should be vacated

(Doc. 138 at 13), asserting that (1) he did not know that the substance he distributed was

considered a controlled substance analogue (*id.* at 8); (2) he was charged with a crime

that did not exist (*id.* at 10); and (3) his rights under the Fifth and Sixth Amendments

---

[1]  Specific references to the controlled substance analogues are derived from the district court's Opinion and Order (Doc. 88) denying Arbuckle and his codefendants' joint motions to dismiss the indictment and for an order in limine to exclude expert testimony (Docs. 77, 78).

"were violated due to a deficient criminal complaint" (*id.* at 12).  In a supplemental filing, Arbuckle asserts that he received ineffective assistance of counsel at all stages of the proceedings against him.  (Doc. 143 at 2, 3.)  For the reasons set forth below, I recommend that the Motion to Vacate Under § 2255 (Doc. 138) be DENIED.

## Background

## I.    The Controlled Substance Analogue Enforcement Act

A preliminary discussion of the Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act), 21 U.S.C. §§ 802(32), 813, is helpful to understand some of Arbuckle's principle assertions in this matter.

On December 3, 2013, Arbuckle and his codefendants were charged with conspiring to distribute a-PVP (Doc. 11 at 1), which the government asserted is an analogue to the Schedule I controlled substance 3, 4-methylenedioxyprovalerone, also known as MDPV.  (Doc. 88 at 2, 3; Doc 83 at 1.)  MDPV is a substance that is among those often referred to as "bath salts."  (Doc. 83 at 1.)

Section 813 of Title 21 provides that a controlled substance analogue shall be treated as a Schedule I controlled substance to the extent that it is intended for human consumption.  21 U.S.C. § 813.  An analogue is defined as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).  The Second Circuit has determined that the provisions of § 813 should be read in the conjunctive: "According to the conjunctive reading, the definition requires two things: first, (i) that the substance be chemically similar and, second, (ii) that it have a similar or greater psychopharmacological effect[,] or (iii) that it be intended to have or be represented as having such an effect."  *United States v. Roberts*, 363 F.3d 118, 120 (2d Cir. 2004).

More recently, in *McFadden v. United States*, the U.S. Supreme Court construed the *mens rea* requirement under the Analogue Act.  135 S. Ct. 2298, 2302 (2015).  The Court concluded that "the Government must prove that a defendant *knew* that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue."  *Id.* at 2305 (emphasis added).  Relying on the text of the Controlled Substances Act (CSA), the Court confirmed "the knowledge requirement" for prosecutions under the Analogue Act, stating that § 841(a)(1) of the CSA "requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal schedules."  *Id.* at 2304.  The Court stated that the knowledge requirement of § 841(a)(1) "may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was" or by establishing that "the defendant knew the identity of the substance he possessed."  *Id.*  Further extending the CSA's framework to the Analogue

Act, *id.* at 2304, the Court found that the Analogue Act's knowledge requirement also could be "established in two ways":

> First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance.  Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.

*Id.* at 2305.  The Court in *McFadden* also held that the Analogue Act is not unconstitutionally vague because the statute's scienter requirement "alleviate[s] vagueness concerns," "narrow[s] the scope of [its] prohibition[,] and limit[s] prosecutorial discretion."  *Id.* at 2307 (alterations in original) (quoting *Gonzales v. Carhart*, 550 US 124, 149, 150 (2007)).

## II.     Preliminary Proceedings in the District Court

As noted above, Arbuckle was charged initially in a complaint, which alleged that he and others engaged in a conspiracy to knowingly and intentionally distribute a-PVP, a Schedule I controlled substance analogue to MDPV, knowing it was intended for human consumption.  (Doc. 1; Doc. 88 at 1, 2.)  At the initial appearance, Attorney Douglas Kallen, an experienced member of this court's Criminal Justice Act panel, was appointed to represent Arbuckle.  (Doc. 13; Docket Entry for 12/06/2013, CJA 20 (appointing Attorney Kallen).)  On December 19, 2013, an Indictment was filed in this district charging Arbuckle, and his two codefendants, Brett Lawton and Devin Messier, with engaging in a conspiracy to distribute a-PVP, in violation of 21 U.S.C. §§ 813, 841(a)(1), and 846.  The Indictment charged:

From in or about September 2013 to in or about November 2013, in the District of Vermont and elsewhere, defendants BRETT LAWTON, DEVIN MESSIER[,] and TOM ARBUCKLE, knowingly and willfully conspired together and with others known and unknown to the Grand Jury to distribute a mixture or substance containing a detectible amount of a-PVP, a Schedule I controlled substance analogue, as defined in Title 21, United States Code, Section 802(32), knowing that the substance was intended for human consumption.

(Doc. 25.)

The record here reveals that following arraignment the defendants formulated a joint defense strategy to challenge the chemical composition of the substance charged in the Indictment and the constitutionality of enforcing the Analogue Act.  (*See* Docs. 52, 62, 77.)  As part of this strategy, on April 11, 2014 Attorney Kallen filed a motion (Doc. 52) seeking approval for funding under the Criminal Justice Act to retain the services of Joseph Bono, an independent forensic chemist to analyze the substances alleged to be the controlled substance analogue.  (*Id.* at 1; 2, ¶ 5.)  Mr. Bono's curriculum vitae and an accompanying statement described as a "bio" revealed he had retired from federal service as a forensic chemist and that during his career he had served in several forensic chemistry positions with the Drug Enforcement Administration (DEA), the Naval Investigative Service, and the United States Secret Service.  (Doc. 52-1 at 1, 2; Doc. 52-2 at 1.)  His career included service as Laboratory Director of the DEA's Mid-Atlantic Laboratory and as the Chief of the DEA's Special Testing and Research Laboratory.  (Doc. 52-1 at 1; Doc. 52-2 at 1.)  The court granted the requested funding. (Doc. 53.)

On July 18, 2014 Attorney Kallen filed another motion (Doc. 62) seeking authorization to retain the services of a second expert, Nicholas Cozzi, Ph.D. (Doc. 62-2 at 2, ¶ 8.) Attorney Kallen argued that the services of Dr. Cozzi were necessary to address the government's expert's conclusion that a-PVP had a stimulant effect on the body's central nervous system similar to that of MDPV, the Schedule I controlled substance. (Doc. 62 at 2, ¶ 8.) Dr. Cozzi's curriculum vitae revealed that he held a doctorate in Pharmacology, and that he was a member of the faculty at the Department of Cell and Regenerative Biology within the University of Wisconsin School of Medicine and Public Health. (Doc. 62-2 at 1.) The motion for the additional funding was granted. (Doc. 66.)

## III.   The Motion to Dismiss

On September 24, 2014, a Joint Motion to Dismiss the Indictment was filed by counsel for all Defendants. (Doc. 77.) The Motion sought dismissal of the Indictment, contending that the Analogue Act was "unconstitutionally vague as applied to the facts of this case." (*Id.* at 1.) Specifically, Defendants argued that they had no fair warning that a-PVP was a controlled substance analogue of MDPV. (*Id.*) The Motion was accompanied by declarations from Dr. Cozzi (Doc. 77-1) and forensic chemist Bono (Doc. 77-2). In their declarations, Dr. Cozzi and Mr. Bono explained their position that a-PVP is significantly different from MDPV. (Doc. 77-1 at 3; Doc. 77-2 at 2.) According to these witnesses, the definition of analogue found at § 802(32)(A) called for a scientific or technical comparison of the two substances but failed to define the relevant term—"substantially similar"—by which the comparison could be judged. (Doc. 77-1

6

at 1; Doc. 77-2 at 10.)  The declarations also indicated that no scientific consensus exists regarding the meaning of this term.  (Doc. 77-1 at 1; Doc. 77-2 at 10; *see also* Doc. 78 at 5.)  Accordingly, in the opinion of these experts, a-PVP and MDPV were significantly different substances.  (Docs. 77-1, 77-2.)

In a related motion, Defendants jointly moved for an order in limine to exclude the government's experts from testifying about the similarities between a-PVP and MDPV. (Doc. 78 at 1.)  The defense argued that the testimony of the government's experts was unreliable under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).  (Doc. 78 at 4.)

In its Response to the motions (Doc. 83), the government offered opinions from two experts.  (Doc. 83-1 at 5–6; Doc. 83-2 at 6–7.)  First, DEA chemist Thomas DiBerardino, Ph.D. opined that the chemical structure of a-PVP and MDPV shared "the same core chemical structure."  (Doc. 83-1 at 5.)  Therefore, according to Dr. DiBerardino, a-PVP was "substantially similar" to MDPV, the Schedule I controlled substance.  (*Id.* at 6.)  The government also offered the opinion of pharmacologist-toxicologist, Ambuja Bale, Ph.D.  (Doc. 83-2 at 6–7.)  Dr. Bale's report stated that a-PVP has a stimulant effect on the human body's central nervous system that is "substantially similar" to the stimulant effect of MDPV.  (*Id.* at 6.)

On January 9, 2015, prior to the Supreme Court's decision in *McFadden*, the district court issued an Opinion and Order denying both the Joint Motion to Dismiss the Indictment and the Joint Motion in Limine to Exclude Expert Testimony.  (Doc. 88.) Judge Sessions concluded that there was "arguable similarity" in the molecular diagrams for a-PVP and MDPV (*id.* at 7), and that with respect to psycho-pharmacological effects

of the two substances, at least as demonstrated by animal studies, the effects of the drugs were similar as well (*id*. at 8). The court rejected Defendants' claim that the Second Circuit decision in *Roberts* compelled a requirement that the government show similarities between the substances in both atomic structure and metabolization. (*Id*. at 8.) The court ultimately concluded that the question of whether or not a substance was a controlled substance was a question to be resolved by the jury. (*Id.* at 8–9.)

The district court also rejected the defendants' vagueness challenge to the Analogue Act, concluding that the term "substantially similar" was to be defined by its ordinary meaning. (*Id*. at 9 (quoting *United States v. Reece*, Criminal No. 12–00146, 2013 WL 3865067, at *9 (W.D. La. July 24, 2013)).) The district court also rejected Defendants' argument that because the Analogue Act was enacted to regulate only *newly* designed drugs, and a-PVP was patented in 1967, the drug was beyond the scope of substances Congress had sought to regulate. (*Id.* at 10 (quoting *United States v. Washam*, 312 F.3d 926, 933 (8th Cir. 2002)).) The court concluded that Congress intended to proscribe all drugs that are similar in chemical structure and effect to illegal drugs. (*Id.*) Finally, the court rejected a Due Process challenge brought by the defendants. (*Id.* at 10–11.) The defendants had contended that the lack of a definition within the Analogue Act for substantial similarity presented a "danger of arbitrary enforcement." (*Id.* at 10.) The court concluded that the meaning of the term "controlled substance analogue" was sufficient to meet the requirement that "'a criminal offense be defined "in a manner that does not encourage arbitrary and discriminatory enforcement."'" (*Id.*

8

(quoting *Roberts*, 363 F.3d at 126).)  The court also denied the Motion in Limine which sought to exclude the testimony of the government's expert witnesses.  (*Id.* at 15.)

As noted below, all three Defendants subsequently pled guilty.  (Doc. 140 at 9 (Arbuckle); 12 (Lawton); 15 (Messier).)  Codefendants Lawton and Messier reserved their right of appeal in their plea agreements and, as to Lawton alone, the district court's ruling is currently on appeal.  *See United States v. Lawton*, Docket No. 15-2456 (2d Cir. Aug. 4, 2015) (appeal docketed).

## IV.   The Plea Agreement and the Guilty Plea

Following the denial of the Motion to Dismiss, plea agreements were filed in the district court.  (Doc. 98 (Arbuckle's Plea Agreement); *see also* ECF No. 99 in *United States v. Lawton*, 2:13-cr-00165-1 (D. Vt. 2015); ECF No. 100 in *United States v. Messier*, 2:13-cr-00165-2 (D. Vt. 2015).)  Arbuckle, with benefit of counsel, agreed to plead guilty to the Indictment's sole count, which charged him with engaging in a conspiracy with others to distribute a-PVP.  (Doc. 98 at 1, ¶ 1.)  As part of his agreement with the government, Arbuckle entered into a drug-quantity stipulation under the United States Sentencing Guidelines (USSG).  (*Id.* at 1–2, ¶ 4.)  In this regard, Arbuckle agreed that his offense conduct involved the distribution of the equivalent of 9,200 grams of methcathinone,[2] "for a marijuana equivalent . . . of between 3,000 and 10,000 kilograms of marijuana," and "that this amount was reasonably foreseeable to TOM ARBUCKLE." (*Id.*)

---

[2]  The Presentence Investigation Report (PSR) later determined that methcathinone was the closest analogue to a-PVP. (PSR at 14, ¶ 69.)  Under the Sentencing Guidelines, one gram of methcathinone is equivalent to 380 grams of marijuana.  U.S. Sentencing Guidelines Manual § 2D1.1 cmt. 8(D) (U.S. Sentencing Comm'n 2015).

In exchange for Arbuckle's plea of guilty, the government agreed that it would not prosecute Arbuckle for any other offenses known to it that related to the a-PVP conspiracy. (*Id.* at 4, ¶ 11(a).) The government further agreed that it would recommend that Arbuckle had manifested an acceptance of responsibility for his offense conduct, and therefore he was entitled to the offense-level reductions pursuant to USSG § 3E1.1(a) and (b). (*Id.* ¶ 11(c), (d).) Significantly, the government also agreed that in the event the final offense-level determination under the Sentencing Guidelines was level 29 or above, the district court should vary from the otherwise applicable sentencing guideline range. (*Id.* ¶ 11(b).) The parties stipulated, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence of 48 months of imprisonment was the appropriate term. (*Id.* at 5, ¶ 13.) In the written agreement, Arbuckle acknowledged that he made the agreement of his own free will, with the advice and assistance of Attorney Kallen. (*Id.* ¶ 16.) Arbuckle also acknowledged that no promises or representations other than those set forth in the Plea Agreement had been made to him to induce him to plead guilty. (*Id.*) Arbuckle stated that he was satisfied with the legal representation he had received from Attorney Kallen. (*Id.* at 6, ¶ 16.)

On March 17, 2015, Arbuckle appeared in the district court to enter his plea of guilty consistent with the Plea Agreement.[3] (Doc. 140.) The transcript reveals that at the Change of Plea hearing Judge Sessions engaged in the complete colloquy required by

---

[3] Arbuckle's codefendants, Lawton and Messier, also pleaded guilty to the charged conspiracy. (*See* ECF No. 99 in *United States v. Lawton*, 2:13-cr-00165-1 (D. Vt. 2015); ECF No. 100 in *United States v. Messier*, 2:13-cr-00165-2 (D. Vt. 2015).) Unlike Arbuckle, codefendants Lawton and Messier had not entered into binding agreements with regard to the sentences to be imposed upon them. (*See* Doc. 140 at 25, 26.)

Rule 11 of the Federal Rules of Criminal Procedure.  (*Id.*)  Under oath, Arbuckle confirmed that he had had an adequate opportunity to go over the Indictment with Attorney Kallen and that he was satisfied with the representation of Attorney Kallen.  (*Id.* at 7–8.)  Judge Sessions thoroughly explained to Arbuckle the constitutional rights he was waiving by his admission of guilt.  (*Id.* at 15–17.)  Judge Sessions carefully reviewed the elements of the conspiracy offense to which Arbuckle was pleading guilty, explaining that at a trial the government would have to prove beyond a reasonable doubt that the substance alleged in the Indictment was a-PVP, a controlled substance analogue.  (*Id.* at 8.)  Arbuckle acknowledged an understanding of the elements of the conspiracy that the government would have to prove at trial, including an acknowledgment that a-PVP is a controlled substance analogue.  (*Id.*)  The Judge reviewed the possible maximum penalties Arbuckle faced by his plea.  (*Id.* at 8–9.)  Judge Sessions also reviewed the drug-quantity stipulation to which Arbuckle had agreed.  (*Id.* at 19.)  Judge Sessions asked Arbuckle, "Has anyone threatened you or anyone else forced you in any[ ]way to plead guilty today? "  (*Id.* at 17.)  Under oath, Arbuckle answered that he had not been threatened or forced to plead guilty.  (*Id.*)  Finally, Judge Sessions reviewed with Arbuckle the binding nature of the Rule 11(c)(1)(C) Plea Agreement.  (*Id.* at 19.)

During the Change of Plea hearing, the prosecutor described the factual basis for the conspiracy charge.  (*Id.* at 27–28.)  As part of that presentation, the prosecutor stated that investigators had accomplished two controlled purchases of a-PVP from codefendant Messier.  (*Id.* at 28.)  The prosecutor noted the seizure of a-PVP from Messier and various admissions made by Arbuckle concerning his distribution of a-PVP.  (*Id.*)  The

11

prosecutor stated that the substance seized in the investigation was a-PVP, which is a controlled substance analogue as defined in 21 U.S.C. § 802(32). (*Id.*) Under oath, Arbuckle agreed that the facts the prosecutor described were accurate (*id.*), and Attorney Kallen agreed that the government could prove the facts which supported the conspiracy charge (*id.* at 29). After completing the full Rule 11 inquiry, Judge Sessions concluded that there was a factual basis for Arbuckle's plea of guilty and that the plea was competently and voluntarily made, free from any undue influence. (*Id.* at 30.) Accordingly, the court accepted Arbuckle's plea of guilty and ordered the preparation of a presentence report. (*Id.* at 31.)

## V.    The Presentence Report and Sentencing

Prior to sentencing, a Presentence Investigation Report (PSR) was submitted to the court. The PSR concluded that Arbuckle faced a sentencing guideline range of 135 to 168 months, based on the total offense level of 32 and criminal history category of II.[4] (PSR at 29, ¶ 128.) While minor objections and factual clarifications were requested by counsel during the preparation of the final PSR (*see* PSR at 32, Addendum to the Presentence Report), no factual objections to the PSR were asserted at sentencing (Doc. 141 at 2–3).

Arbuckle appeared for sentencing in the district court on August 24, 2015. (*Id.* at 1.) Judge Sessions ascertained that Arbuckle had read the PSR and reviewed it with his lawyer. (*Id.* at 2.) Upon inquiry by the court, Arbuckle stated that there were no

---

[4] The PSR took notice of the binding 48-month sentence that was called for as part of the Rule 11(c)(1)(C) Plea Agreement. (PSR at 29, ¶ 129.)

factual errors in the presentence report.  (*Id.* at 3.)  Judge Sessions noted that the Plea Agreement was a binding plea agreement, requiring the court to impose a sentence of 48 months if the court chose to accept the agreement.  (*Id.*)  Judge Sessions stated his intention to accept the binding Plea Agreement and set forth his precise reasons for doing so.  (*Id.*)

After hearing from Arbuckle, the court engaged in the substantive sentencing guideline calculation.  (*Id.* at 9–10.)  That analysis was consistent with the analysis set forth in the PSR except to the extent the district court accorded Arbuckle the offense-level reduction for manifestation of an acceptance of responsibility.[5]  (*Id.* at 10.)  The court concluded that under the Sentencing Guidelines Arbuckle faced a term of imprisonment of 108 to 135 months.  (*Id.*)  However, Judge Sessions accepted the joint agreement of the parties and sentenced Arbuckle to the 48-month term called for by the agreement.  (*Id.*)  Judge Sessions advised Arbuckle of his right to pursue an appeal pursuant to 18 U.S.C. § 3742.  (*Id.* at 12.)  No direct appeal was taken.

## VI.   The § 2255 Motion, as Amended

On November 2, 2015, Arbuckle filed a Motion pursuant to 28 U.S.C. § 2255 seeking to Vacate his conviction and sentence.  (Doc. 138.)  Arbuckle's claims set forth in the Motion can be summarized as follows.  First, Arbuckle contends that the government failed to prove that he knowingly dealt in a controlled substance.  (*Id.* at 8.)

---

[5]  The PSR had denied the acceptance-of-responsibility offense-level reduction because of reports of Arbuckle's continued criminal conduct while on pretrial release and because he tested positive for controlled substances.  (PSR at 13, ¶¶ 65, 67.)

Second, Arbuckle renews claims made by counsel in the Motion to Dismiss (*see* Doc. 77), arguing that a-PVP was not a controlled substance under the Analogue Act during the time of the conspiracy (Doc. 138 at 10). Finally, Arbuckle asserts that the Complaint was deficient in that it failed to provide "fair notice" of the alleged analogue. (*Id.* at 12.)

On November 13, 2015, Arbuckle filed a motion seeking leave to amend his original § 2255 Motion, in order to add a claim that he received ineffective assistance of counsel. (Doc. 143 at 2.) Therein, Arbuckle asserts that Attorney Kallen was ineffective on numerous bases. First, Arbuckle asserts Kallen failed to seek dismissal of the Indictment for an unspecified violation of the Speedy Trial Act. (*Id.* at 3.) Second, Arbuckle contends he was coerced into pleading guilty by Attorney Kallen. (*Id.*) Third, Attorney Kallen inaccurately advised Arbuckle that the motions to dismiss the indictment and exclude evidence would be granted. (*Id.*) Fourth, Attorney Kallen failed to request a *Daubert* hearing. (*Id.*) In addition, Arbuckle contends that Attorney Kallen failed to request a *Fatico* hearing to challenge facts at sentencing and "fail[ed] to submit physical evidence" provided by Arbuckle. (*Id.*) Arbuckle also claims that Attorney Kallen "fil[ed] fruitless motions." (*Id.*) Lastly, Arbuckle contends that Kallen stated that he could not win at a trial. (*Id.*) According to Arbuckle, this statement was the sole reason for him to enter into the Plea Agreement. (*Id.*)

## Analysis

### I.     Standards Governing § 2255 Motions

A prisoner in federal custody may file a motion under 28 U.S.C. § 2255 on the grounds that his sentence was imposed in violation of the Constitution or federal laws,

was issued by a court that did not have jurisdiction, was in excess of the lawful

maximum, "or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief

under § 2255 is therefore generally available "'only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes a

"fundamental defect which inherently results in a complete miscarriage of justice."'"

*Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*,

73 F.3d 8, 12 (2d Cir. 1995)).  Arbuckle bears the burden of establishing by a

preponderance of the evidence any claim advanced in his § 2255 Motion.  *See Triana v.*

*United States*, 205 F.3d 36, 40 (2d Cir. 2000) (stating "burden of proof" fell on claimant

by "preponderance of the evidence"); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir.

1995) (noting "usual burden" on petitioners).

Two related hurdles may bar a prisoner's § 2255 motion.  First, a defendant's

guilty plea waives any non-jurisdictional claims.  *United States v. Hsu*, 669 F. 3d 112,

117–18 (2d Cir. 2012) ("[I]t is well settled that a defendant's plea of guilty admits all of

the elements of a formal criminal charge, and, in the absence of a court-approved

reservation of issues for appeal, waives all challenges to the prosecution except those

going to the court's jurisdiction." (quoting *Hayle v. United States*, 815 F.2d 879, 881

(2d Cir. 1987))).  Second, "[a] § 2255 petition may not be used as a substitute for direct

appeal."  *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam) (citing

*United States v. Frady*, 456 U.S. 152, 165 (1982)).  Accordingly, where a federal prisoner

attempts to use a § 2255 motion to assert a claim that could have been raised on direct

appeal but was not so raised, the claim will be procedurally barred unless the prisoner

shows (1) cause for failing to raise the claim on direct appeal and prejudice therefrom, or (2) actual innocence. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) ("[T]he procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998))).

### A.    Waiver

Here Arbuckle has waived his substantive challenges to the Indictment by his plea of guilty.  As noted above, "[i]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle*, 815 F. 2d at 881–82.  Arbuckle has not challenged the jurisdiction of the court but claims that the government could not prove that the substance alleged in the Indictment was a controlled substance analogue. Because Arbuckle has pled guilty to the offense, his claim has been waived.

### B.    Procedural Default and Actual Innocence

In a related context, Arbuckle may not now raise his claims because he failed to pursue a direct appeal. *DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) ("[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted.").  Arbuckle makes no attempt to show cause—defined

as "something external to the petitioner" that "cannot be fairly attributed to him"—for his failure to raise his arguments on direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis omitted). He also makes no showing of a compelling claim of actual innocence.[6] Accordingly, his claims are barred.

## II. Ineffective-Assistance-of-Counsel Claims

### A. Controlling Legal Standards

Unlike Arbuckle's other claims, his ineffective-assistance claims may be raised for the first time in a § 2255 motion, "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 509 (2003); *accord Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010). In criminal proceedings, a defendant has a Sixth Amendment right to effective assistance from his attorney at all stages of the proceedings, including the entering of a guilty plea, *see, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see generally Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012), and sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *see also Mempa v. Rhay*, 389 U.S. 128, 134 (1967).

---

[6] In the event that codefendant Lawton is successful in his direct appeal of the denial of the Motion to Dismiss, Arbuckle *may* be able to bring a claim of actual innocence in a successive § 2255 motion, if permitted by the Court of Appeals. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). "[T]he 'ends of justice' require federal courts to entertain [successive habeas] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). The Supreme Court, however, has not yet resolved the issue of "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera*, 506 U.S. at 404–05). In *McQuiggin*, the Court held that, if proved, actual innocence permits habeas petitioners to overcome the expiration of the statute of limitations in order to have the merits of his or her constitutional claims heard. *McQuiggin*, 133 S.Ct. at 1928. Although *McQuiggin* was decided in the context of collateral review, the Court indicated that its holding was limited to initial habeas petitions and was not applicable to second or successive petitions. *See id.* at 1933–34.

In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by *Strickland v. Washington*, 466 U.S. 668 (1984): (1) he must show that counsel's performance was "so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' and (2) he must show 'that the deficient performance prejudiced the defense,' in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 690, 687, 694).

"The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* at 85. Regarding the first prong of the *Strickland* analysis, an attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Strickland*, 466 U.S. at 688. The question is not whether counsel "deviated from best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011), but whether his "representation amounted to incompetence under 'prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

18

In assessing the attorney's performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *id.* (quoting *Strickland*, 466 U.S. at 691), and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).  "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 588 (quoting *Strickland*, 466 U.S. at 690).

As to the second *Strickland* prong, counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the context of a guilty plea, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  In the sentencing context, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence."  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).  With these standards in mind, I turn to Arbuckle's specific claims of ineffectiveness.

B.     **Claim of Attorney Coercion**

Arbuckle contends that Attorney Kallen coerced Arbuckle into pleading guilty to the conspiracy charge.  (Doc. 143 at 3.)  Arbuckle asserts that Attorney Kallen advised him "that he (counsel) could not win which is the sole reason for [Arbuckle] to enter into such a plea agreement that [Arbuckle] was not satisfied with."  (*Id.*)

Arbuckle's contentions that he was coerced by Kallen's purported statement that Arbuckle could not prevail at trial are contrary to the statements Arbuckle made, under oath, before Judge Sessions at his Change of Plea proceeding.  (*See* Doc. 140 at 17.)  "A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010); *see United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001) (per curiam) (holding that court was entitled to rely on defendant's sworn statements made in open court); *see also United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001).

The transcript of the Change of Plea proceeding reveals the following colloquy between Arbuckle and Judge Sessions:

> THE COURT:  Has anyone threatened you or anyone else forced you in any[]way to plead guilty today?
>
> MR. ARBUCKLE:  No.

(Doc. 140 at 17.)

Later in the proceeding, Judge Sessions reviewed the specific provisions of the Plea Agreement with Arbuckle, and then inquired of the defendant:

THE COURT:  Have there been any other promises or representations made by anyone that's induced you to plead guilty today?

MR. ARBUCKLE:  No.

(*Id.* at 21.)

In concluding its Rule 11 inquiry of Arbuckle, the court later asked of him:

THE COURT:  Are you pleading guilty freely and voluntarily with a full understanding of the nature of the charges and the rights that you're waiving?

 MR. ARBUCKLE:  Yes, Your Honor.

(*Id.* at 29–30.)

Statements such as these at a plea allocution "carry a strong presumption of veracity."  *United States v. Doe*, 537 F. 3d 204, 213 (2d Cir. 2008); *see also Adames v. United States*, 171 F. 3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them).  In light of these statements under oath, I find Arbuckle's current assertions unworthy of belief, and Arbuckle has failed to meet his burden to show that Kallen's performance was objectively unreasonable.

To satisfy the *Strickland*'s prejudice requirement, Arbuckle "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *accord Lynn v. Bliden*, 443 F.3d 238, 247–48 (2d Cir. 2006).  Concerning the second prong—

whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694—the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d. Cir. 1998) (per curiam)).  Where a petitioner claims that he would have gone to trial rather than plead guilty, he can show prejudice by providing:

> [S]ome basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea.

*Cuevas v. United States*, Nos. 10 Civ. 5959(PAE)(GWG), 98 Cr. 1053(PAE), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012), *adopted*, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013).  Where, as here, "'a defendant obtains a meaningful strategic benefit by pleading guilty, most courts consider it unlikely that an involuntary or ill-advised plea ensued.'" *Cusano v. United States*, No. 05 Civ. 7177(WHP), 2007 WL 4142771, at *3 (S.D.N.Y. Nov. 16, 2007) (quoting *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004)).  And where there is "extensive evidence of his guilt," the petitioner must articulate a convincing basis on which he would have foregone "the substantial benefit resulting from his plea" and risked a harsher sentence at trial.  *Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5–6 (S.D.N.Y. Apr. 22, 2010); *see also United States v. Arteca*, 411 F.3d 315, 321 (2d. Cir. 2005) (no showing of prejudice where defendant was aware that plea agreement's sentencing estimate was not binding, received benefits from

the plea deal, and had "not provided any persuasive reason for doubting the strength of the government's case against him").

Arbuckle provides no reason to believe he would have prevailed at trial.  The proof of Arbuckle's guilt, set forth in the PSR at ¶¶ 18–67 was overwhelming.  Arbuckle plainly obtained a substantial benefit by pleading guilty pursuant to the Agreement.  At sentencing Judge Sessions concluded that Arbuckle faced an imprisonment range under the advisory Sentencing Guidelines of 108 to 135 months.  (Doc. 141 at 10.)  Had Arbuckle proceeded to trial and been convicted, foregoing the adjustment for acceptance of responsibility as a consequence of a guilty plea, Arbuckle faced a sentencing range of 135 to 168 months.  Yet the Plea Agreement negotiated by Attorney Kallen provided for a sentence of 48 months.  Clearly, Arbuckle derived a substantial benefit by pleading guilty, and his claim that he wanted to proceed to trial rings hollow.  In any event, Arbuckle has also failed to satisfy *Strickland*'s prejudice prong.

### C.      Failure to Move for Dismissal for Speedy Trial Act Violation

Without any substantive analysis, Arbuckle asserts that Attorney Kallen was ineffective for failing to move for dismissal of the Indictment for a violation of the Speedy Trial Act (STA), codified in part at 18 U.S.C. § 3161.  This claim is meritless.  Arbuckle bears the burden of proof and his vague and conclusory assertion of a violation of the STA simply does not satisfy that burden.

The STA mandates that a criminal defendant must be brought to trial within 70 days of the filing of the indictment or the defendant's appearance, whichever occurs later.  18 U.S.C. § 3161(c)(1).  If that deadline is not met, the STA provides that the

indictment "shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).

However, the STA excludes delays due to certain enumerated events from the calculation

of when trial must commence.  *See* 18 U.S.C. § 3161(h).  For instance, "any pretrial

motion, from the filing of the motion through the conclusion of the hearing on, or other

prompt disposition of, such motion" must be excluded from the 70-day period.

§ 3161(h)(1)(D); *see also United States v. Ajemian*, 878 F. Supp. 2d 432, 435 (S.D.N.Y.

2012) ("The amount of time between the motion and disposition need not be

reasonable.").  Likewise, "[a]ny period of delay resulting from a continuance . . . at the

request of the defendant or his counsel or at the request of the attorney for the

government" must also be excluded provided that "the judge granted such continuance on

the basis of his findings that the ends of justice served by taking such action outweigh the

best interest of the public and the defendant in a speedy trial."  § 3161(h)(7)(A).  Time

may also be excluded where there is "[a] reasonable period of delay when the defendant

is joined for trial with a codefendant as to whom the time for trial has not run and no

motion for severance has been granted."  § 3161(h)(6).

A review of the docket entries here reveals that the court scrupulously adhered to

the requirements of the STA by accounting for periods of delay from the arraignment

until Arbuckle's plea of guilty on March 17, 2015.  These specific exclusions are

summarized as follows:

| **Docket No.** | **Event/Disposition** | **Period of Delay Excluded** |
| --- | --- | --- |
| Doc. 33 | Order | 12/20/13 to 3/21/14 |
| Doc. 49 | Order | 2/26/14 to 5/27/14 |

| Docs. 57, 59 | Motion and Order | 5/27/14 to 7/26/14 |
| Docs. 64, 70 | Motion and Order | 7/26/14 to 9/24/14 |
| Docs. 77, 78, 88 | Motions and Order | 9/24/14 to 1/9/15 |
| Docs. 90, 91 | Motion and Order | 1/20/15 to 1/26/15 |
| Docs. 92, 93 | Motion and Order | 1/28/15 to 2/27/15 |

These events reveal that less than 30 days of delay were not excluded from the calculation of when trial had to commence under the STA.  Accordingly, a motion to dismiss the Indictment would not have succeeded.  Attorney Kallen's failure to advance a meritless motion does not amount to ineffective assistance of counsel.  *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010).

### D. Failure to Move for a *Fatico* Hearing, Failure to Submit Physical Evidence, and Filing Frivolous Motions

Arbuckle asserts that Attorney Kallen was ineffective for failing to move for a *Fatico* hearing.  (Doc. 143 at 3.)  "A '*Fatico*' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence." *United States v. Lohan*, 945 F.2d 1214, 1216 (2d Cir. 1991) (citing *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979)).[7]  Arbuckle fails to specify what evidence Attorney

---

[7]  The sentencing dispute resolution process established in *Fatico* has been incorporated in the Sentencing Guidelines.  USSG § 6A1.3(a) provides as follows:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S. Sentencing Guidelines Manual § 6A1.3(a) (U.S. Sentencing Comm'n 2015).

Kallen failed to present at sentencing. In fact, at the time of his sentencing, Arbuckle himself informed the court that he had read and reviewed the PSR and there were no factual errors in the report. (Doc. 141 at 2–3.) Of equal significance is that Arbuckle elected to enter into a binding plea agreement with the government under Rule 11(c)(1)(C), which required the imposition of the 48-month sentence. (Doc. 98 at 5.) As such, it is a mystery what a *Fatico* hearing could have accomplished. For these reasons, Arbuckle fails to sustain his burden to show that Attorney Kallen's performance was objectively unreasonable or to show any resulting prejudice.

In a related claim, Arbuckle contends that Attorney Kallen "fail[ed] to submit physical evidence provided by Petitioner." (Doc. 143 at 3.) Arbuckle does not specify what that evidence may have been or how it would have affected the proceedings. His vague and conclusory assertion does not carry the day.

Similarly, Arbuckle faults Kallen for filing frivolous motions but does not inform the court what motions were frivolous. The court should not engage in an exercise of speculation. For all of these reasons, Arbuckle's above-mentioned claims are meritless.

### E.     Prediction of Success

Arbuckle argues that Attorney Kallen was ineffective for making a prediction that the Motion to Dismiss the Indictment and the Motion in Limine to Exclude Expert Testimony would be granted by the court. Assuming *arguendo* the truth of Arbuckle's statement, Arbuckle's claim is unavailing as Arbuckle fails to show how he was prejudiced by a prediction that ultimately proved to be inaccurate.

### F.      Failure to Request a *Daubert* Hearing

Arbuckle asserts that Attorney Kallen was deficient for failing to request a

*Daubert* hearing, an apparent reference to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579

(1993).  In *Daubert*, the Supreme Court charged trial judges with a gatekeeping function

to exclude unreliable expert testimony.  509 U.S. at 589, 597.  Arbuckle's claim is

patently without merit because Attorney Kallen in fact filed a joint motion based on

*Daubert* to exclude the government experts from testifying at trial.  (Doc. 78.)  In the

motion, it was cogently argued by Kallen that the government's proffered expert

testimony did not satisfy *Daubert*'s test for reliability.  (*Id.* at 3–7.)  Again, Arbuckle's

claim fails because it is simply wrong in its factual assumption.

### G.      No Evidentiary Hearing is Required

In ruling on a § 2255 motion, the district court is required to hold a hearing

"[u]nless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Pham*, 317 F.3d at 185 (stating

§ 2255 does not permit summary dismissals of motions that present "facially valid

claims").  However, § 2255 does not entitle the defendant to a hearing where his

allegations are "vague, conclusory, or palpably incredible."  *Machibroda v. United States*,

368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).

To warrant a hearing, the defendant's motion must set forth specific facts supported by

competent evidence, raising detailed and controverted issues of fact that, if proved at a

hearing, would entitle him to relief.  *See Machibroda*, 368 U.S. at 494; *United States v.*

*Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

27

Here the existing record is sufficient to rule upon Arbuckle's Motion.  Quite simply, Arbuckle has failed to show specific facts that, if proved at a hearing, would warrant the granting of his § 2255 Motion.  Accordingly, no hearing is required.

## Conclusion

Based on the foregoing, I recommend that the Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 138) be DENIED.

Dated at Burlington, in the District of Vermont, this 16th day of February, 2016.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).